IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

BOUTIQUE AIR INC.,                    )
                                      )
    Petitioner,                       )
                                      )
v.                                    )    Civ. No. 24-1314
                                      )
UNITED STATES DEPARTMENT OF           )
TRANSPORTATION, AND PETE              )
BUTTIGIEG, IN HIS OFFICIAL            )
CAPACITY AS SECRETARY OF              )
TRANSPORTATION,                       )
                                      )
    Respondents.                      )

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

OCT 0 2 2024

RECEIVED

## PETITION FOR REVIEW OF AGENCY ORDER

Pursuant to 49 U.S.C. § 46110, and § 41731, et al., § 41733(c)(1), as amended by the FAA Reauthorization Act of 2024, Pub. L. No. 118-63, 138 Stat. 1025, 1215 (May 16, 2024), 5 U.S.C. § 706, and Rule 15(a) of the Federal Rules of Appellate Procedure, Petitioner Boutique Air Inc. ("Petitioner" or "Boutique") hereby petitions this Court for review of the August 8, 2024 order of the Respondent United States Department of Transportation, Office of the Secretary ("Respondent," "Department" or "DOT"), which rejected the application of Petitioner to provide Essential Air Service ("EAS") to the McKellar-Sipes Regional Airport in Jackson, Tennessee Airport ("Airport"), and instead awarded the EAS contract to a competitor airline: Key Lime Air Corporation d/b/a Denver Air Connection "for the four-year term from December 1, 2024, through

November 30, 2028." "Order Selecting Air Carrier," DOT Docket No. DOT-OST-2000-7857, Order 2024-8-4 (the "EAS Decision") (submitted as **Exhibit 1** hereto). The EAS Decision should be vacated pursuant to 5 U.S.C. § 706(2) because it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; without of procedure required by law; and/or unsupported by substantial evidence in the record. Among other things, and without limitation to other issues to be raised by Petitioner, the winning entity – Denver Air Connection – provides less frequent flights than Boutique Air and is demanding a subsidy that is millions of dollars higher than any of Boutique Air's proposal options in only the first year, resulting in an irresponsible use of limited government resources, and ignoring the clear directive of Congress that mandated that the Department's EAS program reduce unnecessary spending.

Petitioner is filing this Petition for Review as a prophylactic measure because the Department has not ruled on the Petition for Reconsideration that Boutique filed with the Department which was dated August 31, 2024 (**Exhibit 2** hereto). Petitioner is concerned that the Department may not rule on the Petition for Reconsideration until after the 60-day period in Section 46110(a), but then will assert that the Petition for Review of the August 8, 2024 EAS Decision is *untimely*. Petitioner understands that the Department may pursue a different tact and claim

2

that this Petition for Review is premature because the Department has not yet ruled

on the Petition for Reconsideration.

In its Petition for Reconsideration, Boutique Air told the Department:

> Finally, Boutique requests that the DOT issue a decision in response
> to this petition for reconsideration within 14 days of today. If DOT
> refuses to issue a ruling by that time, Boutique will properly conclude
> that DOT has issued a final decision which denies the reconsideration
> request. DOT cannot unlawfully interfere with Boutique's property
> rights and rights to due process, or to file a timely appeal or protest,
> by refusing to timely act on this petition for reconsideration.

Petition for Reconsider, Exhibit 2, at p. 4.  The Department did not issue a decision

within 14 days of the August 31 Petition for Reconsideration, and the EAS

Decision may be deemed to be "final" on that basis.

In addition, Petitioner also requested that the Department resolve the Petition

for Reconsideration no later than October 1, 2024.   In a letter dated September 16,

2024, **Exhibit 3** hereto, Petitioner stated:

> Although Boutique appreciates the Department's attention to its
> pending petitions for reconsideration, we are cognizant of the 60-day
> deadline to file a petition for review of the Department decisions with
> the Circuit Court of Appeals pursuant to 49 U.S.C. 46110. In order to
> avoid uncertainty in connection with the issue of ripeness of any
> petition that Boutique files – and to obtain resolution of outstanding
> issues sooner rather than later – Boutique respectfully requests that the
> Department resolve the pending petitions for reconsideration by or
> before October 1, 2024. While the Department has at times in the past
> timely ruled on petitions for reconsideration of EAS decisions, on
> other occasions, the Department has not timely ruled, which creates
> issues for the ripeness of the Circuit Court of Appeals. To avoid
> ripeness issues, the Department should timely respond to pending
> petitions for

3

reconsideration.

We respectfully ask that the Department issue rulings on the pending Boutique petitions for reconsideration no later than October 1, 2024. If the Department does not issue and provide Boutique with a copy of those decisions by that date, Boutique will reasonably assume that the lack of a ruling is in and of itself a final decision of the Department to deny the petition for reconsideration, and shall proceed on that basis.

We are available at your convenience to meet with you – in person or virtually – to discuss this matter.  (*Id*.)

However, the Department did not respond to this letter by the October 1 deadline.

Wherefore, Petitioner Boutique Air, Inc. respectfully requests that the Court review and vacate the EAS Decision (**Exhibit 1** hereto) as violating the statutory requirements for EAS awards and the Administrative Procedure Act.

Respectfully submitted,

*/s/ M. Roy Goldberg*
M. Roy Goldberg, Esq.
D.C. Bar 416953
D.C. Circuit Bar No. 39860
CLARK HILL PLC
1001 Pennsylvania Avenue, N.W.
Suite 1300 South
Washington, DC 20004
Telephone:  (202) 552-2388
Email: rgoldberg@clarkhill.com

Counsel for Petitioner Boutique Air Inc.

Dated: October 2, 2024

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| BOUTIQUE AIR INC., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ. No. 24-_____ |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| TRANSPORTATION, AND PETE | ) | |
| BUTTIGIEG, IN HIS OFFICIAL | ) | |
| CAPACITY AS SECRETARY OF | ) | |
| TRANSPORTATION, | ) | |
| | ) | |
| Respondents. | ) | |

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1(a) of the Federal Rules of Appellate Procedure and Circuit Rule 26.1(a), Petitioner Boutique Air Inc. submits the following for its Corporate Disclosure Statement: Boutique Air Inc. is a corporation organized under the laws of California. Boutique Air Inc. does not have a parent corporation and no public held entity owns 10 percent or more of the shares of Boutique Air Inc.

Undersigned counsel for Boutique Air Inc. certifies that he has reviewed the above information and that it is accurate to the best of his knowledge.

Respectfully submitted,

*/s/ M. Roy Goldberg*
M. Roy Goldberg, Esq.
D.C. Bar 416953

5

D.C. Circuit Bar No. 39860
CLARK HILL PLC
1001 Pennsylvania Avenue, N.W.
Suite 1300 South
Washington, DC 20004
Telephone:   (202) 552-2388
Email: rgoldberg@clarkhill.com

Counsel for Petitioner Boutique Air Inc.

Dated: October 2, 2024

## CERTIFCATE OF SERVICE

Pursuant to Rule 15(c) of the Federal Rules of Appellate Procedure, I hereby certify that I have this 2nd day of October, 2024, caused to be served copies of the foregoing Petition for Review and Corporate Disclosure Statement by hand delivery and First-Class U.S. mail upon the following persons:

## BY HAND DELIVERY:

The Hon. Pete Buttigieg
Secretary of Transportation
Office of the Secretary
U.S. Department of Transportation
1200 New Jersey Avenue, S.E.
Washington, DC 20590

Paul M. Geier, Esq.
Assistant General Counsel for Litigation
Office of the General Counsel
Office of Litigation and Enforcement
1200 New Jersey Avenue, S.E.
Washington, DC 20590

Brian M. Boynton, Esq.
Assistant Attorney General
Civil Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

## BY FIRST CLASS MAIL:

Mr. Cliff Honeycutt
CEO/President
Denver Air Connection, a Key Lime Air Corporation
13252 E. Control Tower Road
Englewood, CO 80112

Mr. Steve Smith C.M.
Executive Director
McKellar-Sipes Regional Airport
Jackson-Madison County Airport Authority
308 Grady Montgomery Dr.
Jackson, TN 38301

Respectfully submitted,

*/s/ M. Roy Goldberg*
M. Roy Goldberg, Esq.
D.C. Bar 416953
D.C. Circuit Bar No. 39860
CLARK HILL PLC
1001 Pennsylvania Avenue, N.W.
Suite 1300 South
Washington, DC 20004
Telephone:  (202) 552-2388
Email: rgoldberg@clarkhill.com

Counsel for Petitioner Boutique Air Inc.

Order 2024-8-4
Issued: August 8, 2024



**UNITED STATES OF AMERICA
DEPARTMENT OF TRANSPORTATION
OFFICE OF THE SECRETARY
WASHINGTON, D.C.**

Issued by the Department of Transportation
on the 8th Day of August, 2024

| Essential Air Service at | |
|---|---|
| **JACKSON, TENNESSEE**<br>(FAIN 69A3452460559)[1] | **DOT-OST-2000-7857** |
| under 49 U.S.C. § 41731 *et seq.* | |

### ORDER SELECTING AIR CARRIER

**Summary**

By this Order, the U.S. Department of Transportation (the Department) selects Key Lime Air Corporation d/b/a Denver Air Connection (DAC) to provide Essential Air Service (EAS) at Jackson, Tennessee, for the four-year term from December 1, 2024, through November 30, 2028. DAC will provide Jackson with a total of 12 weekly nonstop round trips to Hartsfield–Jackson Atlanta International Airport (ATL), using 30-seat Dornier 328 and 50-seat Embraer EMB-145 aircraft, at the annual subsidies listed in the table below.[2]

| Year | Subsidy |
|---|---|
| Year 1 | $7,954,117 |
| Year 2 | $8,510,905 |
| Year 3 | $9,106,668 |
| Year 4 | $9,744,135 |

**Background**

By Order 2022-3-18 (March 28, 2022), the Department selected Southern Airways to provide EAS at Jackson, for the two-year period from June 1, 2022, through May 31, 2024.  Under the terms of that Order, Southern Airways was selected to provide Jackson with a total of 18 weekly nonstop round trips to ATL, using Cessna Grand Caravan aircraft, at an annual subsidy of $2,558,436 for the first year and $2,622,397 for the second year.

Subsequently, by Order 2023-9-10 (September 20, 2023), the Department approved the request of Jackson to alter its EAS pattern provided by Southern Airways, effective October 1, 2023, at

---

[1] FAIN = Federal Award Identification Number.

[2] Such subsidy is calculated on a fiscal year basis, subject to the availability of funds.

- 2 -

no additional annual subsidy, by changing the service to add seasonal service to St. Louis Lambert International Airport (STL), as indicated in the table below.

| Effective Dates | Hub(s) | Weekly Round Trips |
|---|---|---|
| June 1, 2022, through September 30, 2023 | ATL | 18 |
| October 1, 2023, through May 31, 2024 | ATL | 11 |
| | STL | 7 |

In anticipation of the end of the current contract term, the Department issued Order 2023-11-16 (November 17, 2023) (RFI), soliciting proposals for a new term to provide EAS at Jackson, with or without subsidy. In response to that order, Boutique Air, Inc. (Boutique Air), Corporate Flight Management, Inc. d/b/a Contour Airlines (Contour), DAC, and Southern Airways submitted proposals for consideration.[3]

**Subsequent Order**
By Order 2024-6-5 (June 6, 2024), the Department extended the terms of Order 2022-3-18 until the earlier of: (1) December 31, 2024; or (2) the inauguration of new service following the conclusion of the pending air carrier selection proceeding for Jackson. Under this extension agreed to by the air carrier, Southern is required to provide EAS at Jackson and is receiving the annualized subsidy rate that it proposed in response to the Department's RFI ($3,612,250 per year for providing 11 weekly round trips to ATL and seven weekly round trips to STL).

*[continued on page 3]*

---

[3] Southern Airways initially submitted a proposal to provide EAS at Jackson without a subsidy. However, through a letter dated March 27, 2024, Southern Airways formally withdrew its zero-subsidy proposal. *See* "Southern Airways Express LLC (Zero Subsidy Proposal Bid at Jackson)," posted on April 10, 2024, available at: www.regulations.gov/document/DOT-OST-2000-7857-0310.

- 3 -

## Summary of Air Carrier Proposals

| Jackson EAS Proposals | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Air Carrier (Option) | Annual Subsidy (Year 1) | Annual Subsidy (Year 2) | Annual Subsidy (Year 3) | Annual Subsidy (Year 4) | Round Trips per Week | Hub(s) | Aircraft | Seats | Marketing Plan | Interline/ Codeshare | Community Support |
| Boutique Air Option 1 | $3,295,117 | $3,295,117 | $3,525,775 | $3,772,580 | 18 | BNA | PC-12 | 8 or 9 | Yes | United (interline and codeshare) American (interline) | No |
| Boutique Air Option 2 | $3,958,189 | $3,958,189 | $4,235,262 | $4,531,730 | 12 | BNA | PC-12 | 8 or 9 | Yes | United (interline and codeshare) American (interline) | No |
| | | | | | 6 | ATL | | | | | |
| Boutique Air Option 3 | $4,696,046 | $4,696,046 | $5,024,769 | $5,376,503 | 18 | ATL | PC-12 | 8 or 9 | Yes | United (interline and codeshare) American (interline) | No |
| Boutique Air Option 4 | $4,977,846 | $4,977,846 | $5,326,296 | $5,699,136 | 14 | ATL | PC-12 | 8 or 9 | Yes | United (interline and codeshare) American (interline) | No |
| | | | | | 7 | STL | | | | | |
| Boutique Air Option 5 | $6,384,533 | $6,384,533 | $6,831,451 | $7,309,652 | 14 | ATL | PC-12 | 8 or 9 | Yes | United (interline and codeshare) American (interline) | No |
| | | | | | 7 | DTW | | | | | |
| Contour* | $6,981,174 | $7,330,233 | $7,696,744 | $8,081,582 | 12 | ORD | CRJ-200 or ERJ-135/140/145 | 30 | Yes | American (interline) | No |
| Denver Air Connection | $7,954,117 | $8,510,905 | $9,106,668 | $9,744,135 | 12 | ATL | EMB-145 or Dornier 328 | 50/30 | Yes | American, Delta, and United (interline) | Yes |
| Southern Airways Option A | $3,612,250 | $3,702,556 | $3,795,120 | $3,889,998 | 11 | ATL | Caravan | 9 | Yes | United (codeshare and interline) | No |
| | | | | | 7 | STL | | | | | |
| Southern Airways Option B | $3,152,902 | $3,231,725 | $3,312,518 | $3,395,331 | 18 | STL | Caravan | 9 | Yes | United (codeshare and interline) | No |
| *Contour flights to be conducted under 14 CFR Part 380 Public Charters authority, which is subject to Jackson waiving its right to scheduled air service. | | | | | | | | | | | |

The complete public file, including air carrier proposals, for EAS at Jackson may be accessed online through the Federal Docket Management System at www.regulations.gov by entering the community's docket number in the "Search" field.

## Community and State Comments

On February 1, 2024, the Department requested comments from the community of Jackson regarding this selection case. In response, by letter dated March 18, 2024,[4] co-signed by Mr. Steve Smith, Executive Director of Jackson-Madison County Airport Authority; Mr. Rusty Reviere, Chairman of the Board of Jackson-Madison County Airport Authority; Mr. A.J. Massey, Mayor of Madison County; and Mr. Scott Conger, Mayor of the City of Jackson, the community provided support for DAC's proposal, stating that:

---

[4] *See* "The City of Jackson and Madison County, Tennessee (Comments)." March 20, 2024, available at: www.regulations.gov/document/DOT-OST-2000-7857-0309.

- 4 -

After conducting research and listening to feedback from members of our community, the Jackson-Madison County Airport Authority EAS committee unanimously recommends Denver Air Connection (DAC) as the EAS provider for Jackson, TN. Our decision was thoughtfully made with the aim to connect our city with Atlanta, via a reliable, jet service provider. We are confident that DAC's 12 roundtrips per week from Jackson to Atlanta on their superior aircrafts will significantly increase passenger traffic at our airport.

Our current EAS provider, Southern Airways Express, has low reliability and a completion rate of only 56%, according to MKL's 2023 annual report records. This has resulted in many, many complaints from customers and made air travel unreliable for many individuals including those who have completely lost confidence in using MKL for air travel. Unfortunately, Boutique Air, the previous EAS provider, had a similar performance level and lost the contract due to deficient performance. Neither of these are viable options for MKL.

The Department also received several letters from members of the community expressing frustration with the current lack of reliability in air service provided by Southern Airways.[5]

### Decision

Title 49 U.S.C. § 41733(c)(1)[6] directs the Department to consider, among other factors, five specific factors when making an air carrier selection for a community not in Alaska where basic EAS will not be provided without compensation:[7] (A) the demonstrated reliability of the applicant in providing scheduled air service; (B) the contractual, marketing, code-share, or interline arrangements the applicant has made with a larger air carrier serving the hub airport; (C) the preferences of the actual and potential users of air transportation at the eligible place, including the views of the elected officials representing the users; (D) whether the air carrier has included a plan in its proposal to market its services to the community; and (F) the total compensation proposed by the air carrier for providing scheduled air service under this section.[8] In addition, for a place not in Alaska, section 41732(b)(1)(A) requires basic EAS to include at least two daily round trips six days a week.

DAC's proposal meets the air carrier selection criteria the Department is required to consider. DAC has interline agreements with larger air carriers, has provided reliable air service at other EAS communities, and included in its proposal a marketing plan to spend a minimum of $20,000 annually. The community expressed overwhelming preference for DAC, based on its aircraft type, reputation, and reliability in markets similar to Jackson, and the Department finds DAC's service and subsidy levels reasonable.

---

[5] *See* Community Comments (16), April 17, 2024, available at www.regulations.gov/document/DOT-OST-2000-7857-0311.

[6] As amended by the FAA Reauthorization Act of 2024, Pub L. No. 118-63, May 16, 2024, 138 Stat 1025, 1215 ("FAA 2024").

[7] The Department did not receive any proposals to provide EAS at Jackson without subsidy.

[8] Section 41733(E) only applies to EAS operations in Alaska.

- 5 -

Therefore, the Department selects DAC to provide Jackson with a total of 12 weekly round trips to ATL for a four-year term.

**Service Transition**
The Department expects DAC and Southern Airways to work together to make a smooth transition at Jackson with no service hiatus. Before Southern Airways suspends service, the Department expects the air carrier to notify all passengers holding reservations for travel after the suspension date, to assist those passengers in making alternate air transportation arrangements, or to provide a full refund of the ticket price, without penalty, if requested.

**Reminder About EAS Eligibility**
To remain eligible for EAS, communities must comply with all applicable EAS eligibility requirements. We note that many of the eligibility requirements, including those below, do not apply for Fiscal Year 2024, pursuant to Consolidated Appropriations Act, 2024, Pub. L. No. 118-42, March 9, 2024, 138 Stat 25, 303. However, unless Congress waives this eligibility criteria for future fiscal years, compliance will resume at the beginning of Fiscal Year 2025 (October 1, 2024).

Title 49 U.S.C. § 41731(a)(1)(B) provides that a community must maintain an average of 10 enplanements per service day, as determined by the Secretary of Transportation, during the most recent fiscal year, to remain eligible for EAS. Communities, such as Jackson, that are not more than 175 driving miles from the nearest large or medium hub airport, are subject to this requirement under 49 U.S.C. § 41731(d).

As amended by FAA 2024, 49 U.S.C. § 41731(a)(1)(C)(iii)[9] requires that EAS communities less than 175 miles from the nearest large or medium hub airport have an average subsidy per passenger, as determined by the Secretary, of less than $650. Jackson is subject to this requirement, because it is not more than 175 miles from the nearest large- or medium-hub airport.

EAS communities, except for those in Alaska and Hawaii, must have had an average subsidy per passenger of less than $1,000 during the most recent fiscal year, regardless of the distance to the nearest large- or medium-hub airport.[10] Effective October 1, 2026, this amount is reduced to $850.[11]

Under 49 U.S.C. § 41731(e)(1), the Secretary may waive, on an annual basis, subsections (a)(1)(B) and (a)(1)(C)(iii) with respect to an eligible place if such place demonstrates to the Secretary's satisfaction that the reason the eligibility requirements of such subsections are not met is due to a temporary decline in demand. Limitations on these waivers begin October 1, 2026, when the Secretary may not provide a waiver for any community (a) in more than two consecutive fiscal years; or (b) in more than five fiscal years within 25 consecutive years.[12]

---

[9] Under 49 U.S.C. § 41731(c), this requirement does not apply to EAS eligible communities located in the states of Alaska and Hawaii.
[10] *See* 49 U.S.C. § 41731(a)(1)(C)(i) in FAA 2024.
[11] *See* 49 U.S.C. § 41731(a)(1)(C)(ii) in FAA 2024.
[12] 49 U.S.C. § 41731(e), as amended by FAA 2024.

- 6 -

The Department expects DAC and Jackson to work together to ensure that the community will comply with the applicable eligibility requirements. Communities that fail to comply with applicable above requirements may risk having their eligibility in the EAS program terminated. In the event the Department terminates a community's eligibility for EAS due to lack of compliance, that action will supersede this Order.

**Air Carrier Fitness**
Title 49 U.S.C. §§ 41737(b) and 41738 require that the Department find an air carrier fit, willing, and able to provide reliable service before the Department may subsidize it to provide EAS. DAC is subject to the Department's continuing fitness requirements, and no information has come to the Department's attention that would cause the Department to question the air carrier's fitness at this time. In addition, the Federal Aviation Administration has not raised concerns that would negatively affect the Department's fitness findings. The Department therefore concludes that DAC remains fit to conduct the operations proposed at Jackson.

This Order is issued under authority redelegated by the Under Secretary of Transportation for Policy in 49 CFR § 1.25a(b)(6)(ii)(D), as directed by the Assistant Secretary for Aviation and International Affairs under 49 CFR § 1.60(b).

**Accordingly,**

1. The Department selects Key Lime Air Corporation d/b/a Denver Air Connection to provide Essential Air Service at Jackson, Tennessee, from December 1, 2024, through November 30, 2028, in accordance with the proposal set forth in Appendix A, and establishes the annual subsidy rates as described in Appendix B;

2. The Department makes this selection contingent upon receiving properly-executed certifications from Key Lime Air Corporation d/b/a Denver Air Connection that it is in compliance with the Department's regulations regarding drug-free workplaces and nondiscrimination, as well as the regulations concerning lobbying activities;[13]

3. The Department directs Key Lime Air Corporation d/b/a Denver Air Connection to retain all books, records, and other source and summary documentation to support claims for payment, including copies of flight logs for aircraft used to provide EAS under this Order and sold or disposed of, and to preserve and maintain such documentation in a manner that readily permits its audit and examination by representatives of the Department. This documentation shall be retained for three years from the last day of service under this Order, or such longer period as the Department may notify the air carrier. If any litigation, claim, or audit is started before the expiration of the three-year period, the records must be retained until all litigation, claims, or audit findings involving the records have been resolved and final action taken. The air carrier may forfeit its compensation for any claim that is not supported under the terms of this Order;

4. The Department finds that Key Lime Air Corporation d/b/a Denver Air Connection is fit, willing, and able to perform Essential Air Service at Jackson, Tennessee;

---

[13] The certifications are available online under "Reports and Publications" at http://www.transportation.gov/office-policy/aviation-policy/essential-air-service-reports.

- 7 -

5. This docket will remain open pending further Department action; and

6. The Department will serve this Order on the civic officials of Jackson and Madison County, Tennessee, the Airport Manager of McKellar-Sipes Regional Airport, and the Chairman of Jackson-Madison County Airport Authority, Boutique Air, Inc., Corporate Flight Management, Inc. d/b/a Contour Airlines, Key Lime Air Corporation d/b/a Denver Air Connection, and Southern Airways Express LLC.

By:

**CINDY A. BARABAN**
Deputy Assistant Secretary
for Aviation and International Affairs

(SEAL)

*An electronic version of this document is available at*
*www.regulations.gov*

Appendix A

## Key Lime Air Corporation d/b/a Denver Air Connection
Annual Compensation Requirements for Essential Air Service at Jackson, Tennessee
To Provide 12 Round Trips per Week to Hartsfield–Jackson Atlanta International Airport (ATL)



# Bid Proposal

Denver Air Connection will provide 12 round-trips per week to Hartsfield-Jackson Atlanta International Airport (ATL) in a jet aircraft. The proposal is for a two-year term with a four-year option.

**Denver Air Connection**
**Essential Air Service Bid**
**January 31, 2024**

|  | MKL-ATL |
|---|---|
| ERJ145 / 328Jet round trips / week | 12 |
| | |
| **Aircraft Data** | ERJ145/328Jet |
| Block Hours | 1,502 |
| Available Seats | 37,440 |
| Load Factor | 47% |
| | |
| **Passenger Revenue** | |
| Passengers | 17,597 |
| Average Fare | 110.00 |
| Revenue | 1,935,648 |
| | |
| **Expenses** | |
| Aircraft Lease | 990,000 |
| Crew Cost | 1,863,710 |
| Maintenance | 1,649,053 |
| Insurance | 390,000 |
| Overhead Facilities and Staff | 492,000 |
| ATL Operating Expense | 1,160,549 |
| MKL Operating Expense | 389,044 |
| Deice, Catering and Misc. | 76,387 |
| Marketing | 20,000 |
| Fuel Cost | 2,368,080 |
| Total Expense | 9,418,824 |
| | |
| **Annual Subsidy Requirement** | |
| Operating Income | (7,483,176) |
| Profit (5%) | 470,941 |
| Total Subsidy Year 1 | 7,954,117 |
| Total Subsidy Year 2 | 8,510,905 |
| Total Subsidy Year 3 | 9,106,668 |
| Total Subsidy Year 4 | 9,744,135 |
| | |
| **Effective Subsidy Rates** | |
| Subsidy per Trip (97% completion) | 6,571 |
| Subsidy per Passenger | 452 |

11

Appendix B

## Key Lime Air Corporation d/b/a Denver Air Connection
## Essential Air Service to be provided at Jackson, Tennessee
## DOT-OST-2000-7857

Contract Term:           December 1, 2024, through November 30, 2028
Hub(s)                   Hartsfield–Jackson Atlanta International Airport (ATL)
Scheduled Service:       Twelve (12) nonstop round trips each week
Aircraft/Seats:          30-seat Dornier 328 and 50-seat Embraer EMB-145
First Year Subsidy:      $ 7,954,117
Second Year Subsidy:     $ 8,510,905
Third Year Subsidy:      $ 9,106,668
Fourth Year Subsidy:     $ 9,744,135

First Year (June 1, 2024, through May 31, 2025) Rate per Eligible Flight:        $6,568[14]
First Year Weekly Ceiling:    $157,632[15]

Second Year (June 1, 2025, through May 31, 2026) Rate per Eligible Flight:       $7,028[16]
Second Year Weekly Ceiling: $168,672[17]

Third Year (June 1, 2026, through May 31, 2027) Rate per Eligible Flight:        $7,520[18]
Third Year Weekly Ceiling:  $180,480[19]

Fourth Year (June 1, 2027, through May 31, 2028) Rate per Eligible Flight:       $8,046[20]
Fourth Year Weekly Ceiling: $193,104[21]

**Note:** The air carrier understands that it may forfeit its compensation for any flights that it does not operate in conformance with the terms and stipulations of the rate Order, including the service plans outlined in the Order and any other significant elements of the required service, without prior approval. The air carrier understands that an aircraft take-off and landing at its scheduled destination constitutes a completed flight; absent an explanation supporting subsidy eligibility for a flight that has not been completed, such as certain weather cancellations, only completed flights are considered eligible for subsidy. In addition, if the air carrier does not schedule or operate its flights in full conformance with the Order for a significant period, it may jeopardize its entire subsidy claim for the period in question. If the air carrier contemplates any such changes beyond the scope of the Order during the applicable period of this rate, it must first notify the Office of Aviation Analysis in writing and receive written

---

[14] Annual compensation of $7,954,117 divided by 1,211 annual departures (24 weekly departures x 52 weeks x 97 percent completion).

[15] 24 flights per week multiplied by $6,568 per flight.

[16] Annual compensation of $8,510,905 divided by 1,211 annual departures (24 weekly departures x 52 weeks x 97 percent completion).

[17] 24 flights per week multiplied by $7,028 per flight.

[18] Annual compensation of $9,106,668 divided by 1,211 annual departures (24 weekly departures x 52 weeks x 97 percent completion).

[19] 24 flights per week multiplied by $7,520 per flight.

[20] Annual compensation of $9,744,135 divided by 1,211 annual departures (24 weekly departures x 52 weeks x 97 percent completion).

[21] 24 flights per week multiplied by $8,046 per flight.

approval from the Department to be ensured of full compensation.  Should circumstances warrant, the Department may locate and select a replacement air carrier to provide service on these routes.  The air carrier must complete all flights that can be safely operated; flights that overfly points for lack of traffic will not be compensated.  In determining whether subsidy payment for a deviating flight should be adjusted or disallowed, the Department will consider the extent to which the goals of the program are met and the extent of access to the national air transportation system provided to the community.

If the Department unilaterally, either partially or completely, terminates or reduces payments for service or changes service requirements at a specific location provided for under this Order, then, at the end of the period for which the Department does make payments in the stipulated service amounts, the air carrier may cease to provide service to that specific location without regard to any requirement for notice of such cessation.  Those adjustments in the levels of subsidy and/or service that are mutually agreed to in writing by the Department and air carrier do not constitute a total or partial reduction or cessation of payment.

Subsidy contracts are subject to, and incorporate by reference, relevant statutes and Department regulations, as they may be amended from time to time.  However, any such statutes, regulations, or amendments thereto shall not operate to controvert the foregoing paragraph.

Funds may not be available for performance under this Order beyond  September 30, 2024.  The Government's obligation for performance under this Order beyond September 30, 2024, is subject to the availability of funds from which payment for services can be made.  No legal liability on the part of the Government for any payment may arise for performance under this order beyond  September 30, 2024, until funds are made available to the Department for performance.  If sufficient funds are not made available for performance beyond September 30, 2024, the Department will provide notice in writing to the air carrier.

All claims for payment, including any amended claims, must be submitted within 90 days of the last day of the month for which compensation is being claimed.  For example, claims for service provided in July must be filed by October 31; August claims must be submitted by November 30, and so on.



Boutique Air Inc
5 3rd Street Suite 925, San Francisco, CA 94103

August 31, 2024

Attention:
Mr. Scott Faulk
Mr. Kevin Schlemmer
U.S. Department of Transportation
E&S & Domestic Analysis Division
1200 New Jersey Avenue, S.E.
Washington, D.C. 20590

Re: EAS at Jackson, Tennessee Docket No. DOT-OST-2000-7857

Dear Mr. Faulk and Mr. Schlemmer,

Boutique Air hereby respectfully submits this Petition for Reconsideration of the U.S. Department of Transportation ("DOT")'s decision to reject Boutique Air's proposal to provide Essential Air Service ("EAS") at Jackson, Tennessee.

On August 8, 2024, the DOT awarded a four-year contract to Denver Air Connection ("DAC") to provide EAS at Jackson, Tennessee. For the same contract, Boutique Air (a/k/a "BTQ") submitted a valid proposal to serve this community at a significantly lower subsidy than DAC's proposal. Boutique Air has demonstrated extraordinarily solid reliability (99.78% controllable completion for the last two years). DAC provides less frequent flights and they are demanding a subsidy that is millions higher than any of Boutique Air's proposal options in only the first year. Not only is this an irresponsible use of limited government resources, but it ignores the clear directive that Congress has mandated for the EAS program to reduce unnecessary spending.[1]

The DOT considers 5 criteria when determining which carrier to award an EAS contract: 1) Interline and/or codeshare agreements with major carriers operating at the intended hub airports 2) the air carrier's ability to provide reliable service 3) the community's preference 4) the inclusion of a marketing plan by the carrier to market its service to the community in its proposal, and 5) the overall cost for the service in terms of subsidy required. In its Jackson, TN decision, the DOT failed to consistently apply these criteria, especially given that Boutique Air submitted a proposal that was cheaper and/or superior to other proposals. Although the DOT does not have to award EAS contracts purely on a cost basis, the fact remains that Boutique met all of the relevant criteria, and had a much lower price than DAC.

---

[1] See Exhibits C and D



Most people would agree that having more flight options and connection opportunities is advantageous to the flying public because it provides more consumer choices for departures times and in turn opportunities to connect on other airlines at the larger hub airport. With DAC, Jackson does not get flight schedules ranging from early morning to late evening, resulting in dramatically fewer connection opportunities for travelers throughout the day. The DOT has arbitrarily decided that DAC provides ample connection opportunities and this simply is not true when compared to the BTQ proposal.

Boutique Air also is troubled by the fact that under the new EAS selection criteria as determined by congress, the DOT is selectively applying this criteria to all except in circumstances that would favor Boutique Air. In Rutland, Vermont in 2019 the DOT selected a bid that was lower than Boutique Air, against the community's wishes, justifying it by suggesting that a savings of $576,254 over a two-year term was worth defying the community. Back then, cost was not explicitly one of the fiver criteria for selecting an air carrier, which became a criteria only with the 2024 FAA Reauthorization Act.

In Quincy in 2017, after the mayor and city EAS selection committee decided to officially recommend Boutique Air, Quincy mayor Kyle Moore personally informed me that the DOT pressured him to rescind Quincy's decision to recommend Boutique Air and to select Skywest[2] (please see attached news article confirming the recommendation by Quincy for BTQ). This arbitrary and capricious behavior should not be engaged in by an agency which is legally required to provide a fair and responsible administration of the EAS program and is clear evidence of the extreme favoritism that has been rampant in EAS for years. Despite Quincy voting to recommend Boutique Air's proposal, following the pressure from DOT Quincy did in fact rescind its BTQ recommendation and recommended Skywest. The DOT awarded the contract to Skywest citing the excessive cost of the Boutique Air proposal. The total extra cost of the Boutique Air proposal over two years would have been $344,480. Similar to what happened in Rutland, the difference is negligible compared with the millions the DOT is wasting in Jackson, Tennessee. Again, this decision to discriminate against BTQ was made during a time when cost was not explicitly one of the 5 selection criteria as it is now for Jackson with the 2024 FAA Reauthorization Act.

---

2

https://www.wtad.com/quincy-changes-course,-goes-with-skywest-for-essential-air-service.html#:~:text=Q
uincy%20changes%20course%2C%20goes%20with%20SkyWest%20for%20Essential%20Air%20Servic
e,-6%20years%2C%2010&text=The%20Committee%2C%20meeting%20Thursday%20night,Service%2C
%20and%20instead%20recommended%20SkyWest.



Boutique Air Inc
5 3rd Street Suite 925, San Francisco, CA 94103

If the DOT is going to award an EAS contract to a bidder that is grossly more expensive than other legitimate proposals then a clear rationale to justify such a decision would be rudimentary expectation by any United States taxpayer. The DOT instead asserts that the DAC proposal is 'reasonable' without providing any justification for wasting millions of dollars. The awarding of such a bid follows a long pattern of unjustifiable and anti-competitive decision making while squandering millions of taxpayer dollars in the process.

In summary, the DOT's award of the EAS contract to DAC rather than Boutique is arbitrary and capricious, anti-competitive and in violation of DOT's prior practice. The DOT cited Boutique Air as being too expensive when Boutique bid Rutland and Quincy against the recommendations of the elected city officials and this was when the cost of the bid was not one of the primary decision making criteria AND when the recommendation of the city officials was the most important of the criteria. Now, following the recent passing of the 2024 FAA Reauthorization Bill, the bid cost is a primary criteria and the weight of the elected officials' recommendation has been reduced; Despite this clear direction from congress the DOT is asserting that an excess of $4,285,865 per year of is "reasonable"--an excess that pales in comparison the the excesses that would have existed with Boutique Air bids when cost was not even a criteria and the elected officials mattered more.  This is hypocritical, grossly preferential, as well as arbitrary and capricious.

One reason we assert that DAC's subsidy is not reasonable is the fact that, if this subsidy were applied today, Jackson would be terminated from the EAS program altogether.

Per the FAA Reauthorization Act of 2024, a community may qualify for EAS if the subsidy per passenger is below $650 if the community is within 210 miles of the nearest large or medium hub airport. Jackson is 87.4 miles from Memphis International Airport, a Medium Hub Airport, and 135.6 miles from Nashville International Airport, a Large Hub Airport.[3] Jackson, Tennessee is subject to this subsidy cap.

In the last full Fiscal Year for which passenger traffic data is available, FY2023, Jackson saw a total of 6,680 passengers enplane or deplane at McKellar-Sipes Regional Airport. [4]If Denver Air Connection's subsidy had been awarded to transport this many passengers, it would amount to $1,190.74 per passenger, which is nearly double the statutory limit and would result in permanent removal from the EAS Program for Jackson, Tennessee. Not only is it irresponsible of the DOT to award such an expensive

---

[3] See Exhibits F and G.
[4] See Exhibit E



Boutique Air Inc
5 3rd Street Suite 925, San Francisco, CA 94103

bid to a community with this passenger traffic, but it is also irresponsible to award a bid that would adversely affect Jackson's eligibility for EAS in perpetuity. There are simply better options available that are better for the community with more connection opportunities and better flight schedules that do not threaten Jackson's eligibility to remain a part of the EAS Program. DAC's subsidy for Jackson is not only unreasonable, but also totally unjustifiable.

Attached is a table that details a cost comparison of all of Botuique's Proposal options versus Denver Air Connection's proposal. The difference ranges from $8,405,656 to $21,427,236 over four years.[5]

We also want to show that the DOT's decision is not only irresponsible financially, but also it is irresponsible to the environment. By selecting a service which uses a much larger aircraft powered by jet engines, the DOT is in effect causing anywhere from 15,534 to 16,571 additional tons of $CO_2$ to be emitted over four years compared to any of the options from Boutique Air.[6]

Boutique Air is left with no alternative but to formally protest and petition the DOT to reevaluate its decision-making process and reconsider the proposal put forward by Boutique Air which better serves the community and the goals of EAS. We thank you for your time and consideration and look forward to your response.

Finally, Boutique requests that the DOT issue a decision in response to this petition for reconsideration within 14 days of today. If DOT refuses to issue a ruling by that time, Boutique will properly conclude that DOT has issued a final decision which denies the reconsideration request. DOT cannot unlawfully interfere with Boutique's property rights and rights to due process, or to file a timely appeal or protest, by refusing to timely act on this petition for reconsideration.

With respect and appreciation,

Shawn Simpson
CEO, Boutique Air Inc

---

[5] See Exhibit A
[6] See Exhibit B



Boutique Air Inc
5 3rd Street Suite 925, San Francisco, CA 94103

Exhibit A: Resources Wasted by Choosing Denver Air Connection over Boutique Air

| | Year | Subsidy | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |
| DAC Proposal Subsidy Requirements | Year 1 | $7,954,117 | | | | |
| | Year 2 | $8,510,905 | | | | |
| | Year 3 | $9,106,668 | | | | |
| | Year 4 | $9,744,135 | | | | |
| | Total | $35,315,825 | | | | |
| | | | | | | |
| | Year | Option 1 | Option 2 | Option 3 | Option 4 | Option 5 |
| | | | | | | |
| Boutique Air Proposal Subsidy Requirements | Year 1 | $3,295,117 | $3,958,189 | $4,696,046 | $4,977,846 | $6,384,533 |
| | Year 2 | $3,295,117 | $3,958,189 | $4,696,046 | $4,977,846 | $6,384,533 |
| | Year 3 | $3,525,775 | $4,235,262 | $5,024,769 | $5,326,296 | $6,831,451 |
| | Year 4 | $3,772,580 | $4,531,730 | $5,376,503 | $5,699,136 | $7,309,652 |
| | Total | $13,888,589 | $16,683,370 | $19,793,364 | $20,981,124 | $26,910,169 |
| | | | | | | |
| | Milestone | Option 1 | Option 2 | Option 3 | Option 4 | Option 5 |
| | | | | | | |
| Money Wasted by DOT Compared to Each Boutique Air Option | 1 Year | $4,659,000 | $3,995,928 | $3,258,071 | $2,976,271 | $1,569,584 |
| | 2 Year Total | $9,874,788 | $8,548,644 | $7,072,930 | $6,509,330 | $3,695,956 |
| | 3 Year Total | $15,455,681 | $13,420,050 | $11,154,829 | $10,289,702 | $5,971,173 |
| | 4 Year Total | $21,427,236 | $18,632,455 | $15,522,461 | $14,334,701 | $8,405,656 |



Boutique Air Inc
5 3rd Street Suite 925, San Francisco, CA 94103

Exhibit B: Carbon Dioxide Emitted by Denver Air Connection over Boutique Air

| Fuel Burn Comparison of Boutique Air and Contour | | | | | | |
|---|---|---|---|---|---|---|
| Aircraft Type | Route | Fuel Burn (lbs)* | CO2 Emissions (lbs)** | | | |
| EMB 145 | MKL-ORD | 3,406 | 10762.96 | | | |
| PC-12 | MKL-BNA | 341 | 1077.56 | | | |
| PC-12 | MKL-ATL | 541 | 1709.56 | | | |
| PC-12 | MKL-STL | 491 | 1551.56 | | | |
| PC-12 | MKL-DTW | 851 | 2689.16 | | | |
| | | | | | | |
| Total Fuel Burned by Year (lbs) | | | | | | |
| Year | DAC | BTQ Option 1 | BTQ Option 2 | BTQ Option 3 | BTQ Option 4 | BTQ Option 5 |
| 1 | 4,250,688 | 638,352 | 763,152 | 1,012,752 | 981,552 | 1,206,192 |
| 2 | 8,501,376 | 1,276,704 | 1,526,304 | 2,025,504 | 1,963,104 | 2,412,384 |
| 3 | 12,752,064 | 1,915,056 | 2,289,456 | 3,038,256 | 2,944,656 | 3,618,576 |
| 4 | 17,002,752 | 2,553,408 | 3,052,608 | 4,051,008 | 3,926,208 | 4,824,768 |
| | | | | | | |
| Total CO2 Emmitted by Year (Tons) | | | | | | |
| Year | DAC | BTQ Option 1 | BTQ Option 2 | BTQ Option 3 | BTQ Option 4 | BTQ Option 5 |
| 1 | 6,716 | 1,009 | 1,206 | 1,600 | 1,551 | 1,906 |
| 2 | 13,432 | 2,017 | 2,412 | 3,200 | 3,102 | 3,812 |
| 3 | 20,148 | 3,026 | 3,617 | 4,800 | 4,653 | 5,717 |
| 4 | 26,864 | 4,034 | 4,823 | 6,401 | 6,203 | 7,623 |
| | | | | | | |
| Total CO2 Emitted by Selecting DAC Compared to Each Boutique Air Option (Tons) | | | | | | |
| Year | BTQ Option 1 | BTQ Option 2 | BTQ Option 3 | BTQ Option 4 | BTQ Option 5 | |
| 1 | 5,707 | 5,510 | 5,116 | 5,165 | 4,810 | |
| 2 | 11,415 | 11,021 | 10,232 | 10,330 | 9,621 | |
| 3 | 17,122 | 16,531 | 15,348 | 15,496 | 14,431 | |
| 4 | 22,830 | 22,041 | 20,464 | 20,661 | 19,241 | |
| | | | | | | |
| *Based on Fltplan.com average fuel burn for aircraft type to fly specified route | | | | | | |
| **Based on weight of fuel burned times 3.16 | | | | | | |



Boutique Air Inc
5 3rd Street Suite 925, San Francisco, CA 94103

Exhibit C: Original Proposal of Denver Air Connection



## Bid Proposal

Denver Air Connection will provide 12 round-trips per week to Hartsfield-Jackson Atlanta International
Airport (ATL) in a jet aircraft. The proposal is for a two-year term with a four-year option.

**Denver Air Connection**
**Essential Air Service Bid**
**January 31, 2024**

|  | MKL-ATL |
|---|---|
| ERJ145 / 328Jet round trips / week | 12 |
| **Aircraft Data** | **ERJ145/328Jet** |
| Block Hours | 1,502 |
| Available Seats | 37,440 |
| Load Factor | 47% |
| **Passenger Revenue** | |
| Passengers | 17,597 |
| Average Fare | 110.00 |
| Revenue | 1,935,648 |
| **Expenses** | |
| Aircraft Lease | 990,000 |
| Crew Cost | 1,863,710 |
| Maintenance | 1,649,053 |
| Insurance | 390,000 |
| Overhead Facilities and Staff | 492,000 |
| ATL Operating Expense | 1,160,549 |
| MKL Operating Expense | 389,044 |
| Deice, Catering and Misc. | 76,387 |
| Marketing | 20,000 |
| Fuel Cost | 2,368,080 |
| Total Expense | 9,418,824 |
| **Annual Subsidy Requirement** | |
| Operating Income | (7,483,176) |
| Profit (5%) | 470,941 |
| Total Subsidy Year 1 | 7,954,117 |
| Total Subsidy Year 2 | 8,510,905 |
| Total Subsidy Year 3 | 9,106,668 |
| Total Subsidy Year 4 | 9,744,135 |
| **Effective Subsidy Rates** | |
| Subsidy per Trip (97% completion) | 6,571 |
| Subsidy per Passenger | 452 |



Boutique Air Inc
5 3rd Street Suite 925, San Francisco, CA 94103

Exhibit D: Excerpt from Selection Order DOT-OST-2000-7857-0313

**Summary**
By this Order, the U.S. Department of Transportation (the Department) selects Key Lime Air
Corporation d/b/a Denver Air Connection (DAC) to provide Essential Air Service (EAS) at
Jackson, Tennessee, for the four-year term from December 1, 2024, through November 30, 2028.
DAC will provide Jackson with a total of 12 weekly nonstop round trips to Hartsfield–Jackson
Atlanta International Airport (ATL), using 30-seat Dornier 328 and 50-seat Embraer EMB-145
aircraft, at the annual subsidies listed in the table below.[2]

| Year | Subsidy |
|---|---|
| Year 1 | $7,954,117 |
| Year 2 | $8,510,905 |
| Year 3 | $9,106,668 |
| Year 4 | $9,744,135 |

Exhibit E: Passenger Traffic at McKeller-Sipes Regional Airport, Jackson, Tennessee FY 2023

| Year | Month | Enplanements | Deplanements | Total Passengers |
|---|---|---|---|---|
| | | | | |
| 2022 | 10 | 285 | 298 | 583 |
| 2022 | 11 | 308 | 278 | 586 |
| 2022 | 12 | 566 | 508 | 1074 |
| 2023 | 1 | 208 | 190 | 398 |
| 2023 | 2 | 206 | 203 | 409 |
| 2023 | 3 | 242 | 233 | 475 |
| 2023 | 4 | 243 | 211 | 454 |
| 2023 | 5 | 302 | 285 | 587 |
| 2023 | 6 | 272 | 267 | 539 |
| 2023 | 7 | 331 | 338 | 669 |
| 2023 | 8 | 234 | 195 | 429 |
| 2023 | 9 | 245 | 232 | 477 |
| Total | | 3442 | 3238 | 6680 |
| | | | | |
| Source: Bureau of Transportation Statistics | | | | |



**BOUTIQUE AIR**

Boutique Air Inc
5 3rd Street Suite 925, San Francisco, CA 94103

Exhibit F: Driving Distances to MEM and BNA from Jackson, Tennessee





**ⵕⵕ BOUTIQUE AIR**

Boutique Air Inc
5 3rd Street Suite 925, San Francisco, CA 94103

**Exhibit G: CY2023 Preliminary Airport Rankings (Excerpt)**

Source: ACAIS          Final CY23 Enplanements at Commercial Service Airports, by Rank order          6/18/2024

| Rank | RO | ST | Locid | City | Airport Name | S/L | Hub | CY 23 Enplanements | CY 22 Enplanements | % Change |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | SO | GA | ATL | Atlanta | Hartsfield - Jackson Atlanta International | P | L | 50,950,023 | 45,396,001 | 12.23% |
| 2 | SW | TX | DFW | Fort Worth | Dallas-Fort Worth International | P | L | 39,246,196 | 35,345,138 | 11.04% |
| 3 | NM | CO | DEN | Denver | Denver International | P | L | 37,863,966 | 33,773,832 | 12.11% |
| 4 | WP | CA | LAX | Los Angeles | Los Angeles International | P | L | 36,676,975 | 32,326,616 | 13.46% |
| 5 | GL | IL | ORD | Chicago | Chicago O'Hare International | P | L | 35,843,081 | 33,120,474 | 8.22% |
| 6 | EA | NY | JFK | New York | John F Kennedy International | P | L | 30,493,867 | 27,154,885 | 12.30% |
| 7 | SO | FL | MCO | Orlando | Orlando International | P | L | 28,033,177 | 24,469,733 | 14.56% |
| 8 | WP | NV | LAS | Las Vegas | Harry Reid International | P | L | 27,896,019 | 25,480,500 | 9.48% |
| 9 | SO | NC | CLT | Charlotte | Charlotte/Douglas International | P | L | 25,896,193 | 23,100,300 | 12.10% |
| 10 | SO | FL | MIA | Miami | Miami International | P | L | 24,716,890 | 23,949,892 | 3.20% |
| 11 | NM | WA | SEA | Seattle | Seattle-Tacoma International | P | L | 24,594,202 | 22,157,862 | 11.00% |
| 12 | EA | NJ | EWR | Newark | Newark Liberty International | P | L | 24,505,862 | 21,774,690 | 12.54% |
| 13 | WP | CA | SFO | San Francisco International Airport | San Francisco International | P | L | 24,191,117 | 20,411,420 | 18.52% |
| 14 | WP | AZ | PHX | Phoenix | Phoenix Sky Harbor International | P | L | 23,880,446 | 21,852,586 | 9.28% |
| 15 | SW | TX | IAH | Houston | George Bush Intcntl\Houston | P | L | 22,228,829 | 19,814,052 | 12.19% |
| 16 | NE | MA | BOS | Boston | General Edward Lawrence Logan International | P | L | 19,962,577 | 17,443,775 | 14.44% |
| 17 | SO | FL | FLL | Fort Lauderdale | Fort Lauderdale/Hollywood International | P | L | 17,042,632 | 15,370,165 | 10.88% |
| 18 | GL | MN | MSP | Minneapolis | Minneapolis-St Paul International/Wold-Chamberlain | P | L | 17,019,086 | 15,242,089 | 11.66% |
| 19 | EA | NY | LGA | New York | Laguardia | P | L | 16,173,072 | 14,367,463 | 12.57% |
| 20 | GL | MI | DTW | Detroit | Detroit Metro Wayne County | P | L | 15,378,558 | 13,751,197 | 11.83% |
| 21 | EA | PA | PHL | Philadelphia | Philadelphia International | P | L | 13,656,020 | 12,421,168 | 9.94% |
| 22 | NM | UT | SLC | Salt Lake City | Salt Lake City International | P | L | 12,905,239 | 12,383,843 | 4.21% |
| 23 | EA | MD | BWI | Glen Burnie | Baltimore/Washington International Thurgood Marshall | P | L | 12,849,626 | 11,151,169 | 15.23% |
| 24 | EA | VA | DCA | Arlington | Ronald Reagan Washington Ntl | P | L | 12,365,011 | 11,553,850 | 7.02% |
| 25 | WP | CA | SAN | San Diego | San Diego International | P | L | 12,190,159 | 11,162,224 | 9.21% |
| 26 | EA | VA | IAD | Dulles | Washington Dulles International | P | L | 12,073,231 | 10,266,324 | 17.60% |
| 27 | SO | FL | TPA | Tampa | Tampa International | P | L | 11,677,560 | 10,539,459 | 10.80% |
| 28 | SO | TN | BNA | Nashville | Nashville International | P | L | 11,227,159 | 9,829,062 | 14.22% |
| 29 | SW | TX | AUS | Austin | Austin-Bergstrom International | P | L | 10,833,394 | 10,382,573 | 4.34% |
| 30 | GL | IL | MDW | Chicago | Chicago Midway International | P | L | 10,659,401 | 9,650,281 | 10.46% |
| 31 | WP | HI | HNL | Honolulu | Daniel K Inouye International | P | L | 10,149,761 | 8,828,395 | 14.97% |
| | | | **31** | | | | **L Count** | | | |
| 32 | SW | TX | DAL | Dallas | Dallas Love Field | P | M | 8,559,009 | 7,819,129 | 9.46% |
| 33 | NM | OR | PDX | Portland | Portland International | P | M | 8,123,024 | 7,241,882 | 12.17% |
| 34 | CE | MO | STL | St. Louis | St Louis Lambert International | P | M | 7,307,544 | 6,709,080 | 8.92% |
| 35 | SO | NC | RDU | Raleigh | Raleigh-Durham International | P | M | 7,118,953 | 5,849,665 | 21.70% |
| 36 | SW | TX | HOU | Houston | William P Hobby | P | M | 6,800,214 | 6,462,948 | 5.22% |

## ∞ BOUTIQUE AIR

Boutique Air Inc
5 3rd Street Suite 925, San Francisco, CA 94103

Source: ACAIS     Final CY23 Enplanements at Commercial Service Airports, by Rank order     6/18/2024

| Rank | RO | ST | Locid | City | Airport Name | S/L | Hub | CY 23 Enplanements | CY 22 Enplanements | % Change |
|---|---|---|---|---|---|---|---|---|---|---|
| 37 | WP | CA | SMF | Sacramento | Sacramento International | P | M | 6,371,895 | 6,040,824 | 5.48% |
| 38 | SW | LA | MSY | Kenner | Louis Armstrong New Orleans International | P | M | 6,309,196 | 5,931,899 | 6.36% |
| 39 | WP | CA | SJC | San Jose | Norman Y Mineta San Jose International | P | M | 5,958,813 | 5,590,137 | 6.60% |
| 40 | SO | PR | SJU | San Juan | Luis Munoz Marin International | P | M | 5,954,281 | 5,039,771 | 18.15% |
| 41 | WP | CA | SNA | Santa Ana | John Wayne/Orange County | P | M | 5,708,292 | 5,536,313 | 3.07% |
| 42 | CE | MO | MCI | Kansas City | Kansas City International | P | M | 5,654,068 | 4,796,476 | 17.88% |
| 43 | WP | CA | OAK | Oakland | Metro Oakland International | P | M | 5,520,778 | 5,506,232 | 0.26% |
| 44 | SW | TX | SAT | San Antonio | San Antonio International | P | M | 5,336,674 | 4,751,610 | 12.31% |
| 45 | SO | FL | RSW | Fort Myers | Southwest Florida International | P | M | 4,963,261 | 5,132,694 | -3.30% |
| 46 | GL | OH | CLE | Cleveland | Cleveland-Hopkins International | P | M | 4,803,789 | 4,237,795 | 13.36% |
| 47 | GL | IN | IND | Indianapolis | Indianapolis International | P | M | 4,788,308 | 4,209,416 | 13.75% |
| 48 | EA | PA | PIT | Pittsburgh | Pittsburgh International | P | M | 4,492,980 | 3,918,968 | 14.65% |
| 49 | SO | KY | CVG | Hebron | Cincinnati/Northern Kentucky International | P | M | 4,287,722 | 3,702,997 | 15.79% |
| 50 | GL | OH | CMH | Columbus | John Glenn Columbus International | P | M | 4,095,178 | 3,618,555 | 13.17% |
| 51 | SO | FL | PBI | West Palm Beach | Palm Beach International | P | M | 3,815,644 | 3,257,730 | 17.13% |
| 52 | WP | HI | OGG | Kahului | Kahului | P | M | 3,745,866 | 4,125,311 | -9.20% |
| 53 | SO | FL | JAX | Jacksonville | Jacksonville International | P | M | 3,619,735 | 3,177,393 | 13.92% |
| 54 | WP | CA | ONT | Ontario | Ontario International | P | M | 3,181,161 | 2,840,758 | 11.98% |
| 55 | WP | CA | BUR | Burbank | Bob Hope | P | M | 3,132,019 | 3,054,729 | 2.53% |
| 56 | NE | CT | BDL | Windsor Locks | Bradley International | P | M | 3,122,158 | 2,844,713 | 9.75% |
| 57 | SO | SC | CHS | Charleston | Charleston AFB/International | P | M | 3,032,677 | 2,608,497 | 16.26% |
| 58 | GL | WI | MKE | Milwaukee | General Mitchell International | P | M | 2,936,382 | 2,671,281 | 9.92% |
| 59 | AL | AK | ANC | Anchorage | Ted Stevens Anchorage International | P | M | 2,681,811 | 2,604,308 | 2.98% |
| 60 | SW | NM | ABQ | Albuquerque | Albuquerque International Sunport | P | M | 2,605,163 | 2,317,836 | 12.40% |
| 61 | CE | NE | OMA | Omaha | Eppley Airfield | P | M | 2,464,397 | 2,204,395 | 11.79% |
| 62 | SO | TN | MEM | Memphis | Memphis International | P | M | 2,399,856 | 2,163,692 | 10.91% |
| 63 | EA | VA | RIC | Highland Springs | Richmond International | P | M | 2,399,207 | 2,042,834 | 17.45% |
| 64 | NM | ID | BOI | Boise | Boise Air Trml/Gowen Field | P | M | 2,369,164 | 2,230,467 | 6.22% |
| | | | 33 | | | | M Count | | | |
| 65 | EA | VA | ORF | Norfolk | Norfolk International | P | S | 2,307,887 | 2,065,116 | 11.76% |
| 66 | EA | NY | BUF | Buffalo | Buffalo Niagara International | P | S | 2,291,949 | 2,007,508 | 14.17% |
| 67 | SO | KY | SDF | Louisville | Louisville Muhammad Ali International | P | S | 2,267,997 | 1,893,647 | 19.77% |
| 68 | WP | NV | RNO | Reno | Reno/Tahoe International | P | S | 2,251,808 | 2,132,856 | 5.58% |
| 69 | SO | FL | SRQ | Sarasota | Sarasota/Bradenton International | P | S | 2,144,700 | 1,911,999 | 12.17% |
| 70 | SW | OK | OKC | Oklahoma City | Will Rogers World | P | S | 2,135,106 | 1,928,418 | 10.72% |
| 71 | WP | HI | KOA | Kailua Kona | Ellison Onizuka Kona International at Keahole | P | S | 2,097,042 | 2,006,013 | 4.54% |
| 72 | SW | TX | ELP | El Paso | El Paso International | P | S | 2,018,134 | 1,931,067 | 4.51% |
| 73 | NM | WA | GEG | Spokane | Spokane International | P | S | 2,002,283 | 1,905,541 | 5.08% |



Roy Goldberg
T (202) 552-2388
F (202) 572-8687
Email:rgoldberg@ClarkHill.com

Clark Hill
1001 Pennsylvania Avenue N.W.
Suite 1300 South
Washington, DC 20004
T (202) 772-0909
F (202) 772-0919

September 16, 2024

**BY ELECTRONIC MAIL**

The Hon. Carol A. (Annie) Petsonk
Assistant Secretary for Aviation and
International Affairs
U.S. Department of Transportation
1200 New Jersey Ave, SE
Washington, D.C. 20590
Email: carol.petsonk@dot.gov

The Hon. Cindy Baraban
Deputy Assistant Secretary for Aviation and
International Affairs
U.S. Department of Transportation
1200 New Jersey Ave, SE
Washington, D.C. 20590
Email: cindy.baraban@dot.gov

The Hon. A.J. Muldoon
Associate Director
Office of Aviation Analysis
U.S. Department of Transportation
1200 New Jersey Ave, SE
Washington, D.C. 20590
Email: albert.muldoon@dot.gov

Re: <u>EAS Program – Boutique Air, Inc. – Jackson, TN, Muscle Shoals, AL, Show Low, AZ</u>

Dear Assistant Secretary Petsonk, Deputy Assistant Secretary Baraban, and Associate
Director Muldoon:

On behalf of our client Boutique Air, Inc. ("Boutique"), we appreciate the opportunity
to present to the Department of Transportation serious issues and concerns that have arisen
in connection with the Department's Essential Air Service ("EAS") program.    Recently,
Boutique has not been selected for various EAS awards despite presenting fully responsive
and highly competitive proposals.    The manner in which the awards were decided has
prompted Boutique to file multiple petitions for reconsideration with the Department,
specifically:

1. Petition for Reconsideration filed August 31, 2024, of the August 8, 2024 decision
   to award an EAS contract to Denver Air Connection ("DAC") for Jackson,
   Tennessee, Docket No. DOT-OST-2000-7857;

September 16, 2024
Page 2

> 2. Petition for Reconsideration filed August 31, 2024 of the August 21, 2024 decision to award an EAS grant for Muscle Shoals, Alabama to Contour Airlines ("Contour"), Docket No. DOT-OST-2000-7856; Order 2024-8-15; and
>
> 3. Petition for Reconsideration filed August 31, 2024 of the August 22, 2024, decision to award the EAS contract for Show Low, Arizona, to Contour, Docket No. DOT-OST-1998-4409.

A common theme throughout the pending Boutique petitions for review is the fact that there is zero indication as to how the Department complied with – and balanced – the requirements of 49 U.S.C. § 41733(c)(1), which directs the Department to consider, among other factors, five specific factors when making an air carrier selection for a community not in Alaska where basic EAS will not be provided without compensation:

> (A) the demonstrated reliability of the applicant in providing scheduled air service;
>
> (B) the contractual, marketing, code-share, or interline arrangements the applicant has made with a larger air carrier serving the hub airport;
>
> (C) the preferences of the actual and potential users of air transportation at the eligible place, including the views of the elected officials representing the users;
>
> (D) whether the air carrier has included a plan in its proposal to market its services to the community; . . . and
>
> (F) **the total compensation proposed by the air carrier for providing scheduled air service under this section**. (Emphasis added)

Among other things, there is no indication as to the weight that the Department afforded to the fact that Boutique's financial proposal was significantly less expensive to the Department than the winning proposal. If the Department is going to award an EAS contract to a bidder that is significantly more expensive than other legitimate proposals, there needs to be a clear rationale to justify such a decision. Instead, the Department has stated that the winning proposal is "reasonable" without providing any justification for the expenditure of millions of additional dollars to obtain service from the winning bidder. The awarding of such a bid follows a long pattern of unjustifiable and anti-competitive decision-making which seemingly takes no issue with the fact that the selected airlines are charging millions of dollars more than Boutique would if its proposal were accepted by the Department.

Relatedly, there is no indication that the Department considered the negative impact on the airport's qualification to receive EAS given the amount of subsidy proposed by the airline selected by the Department.

There is also no evidence that the Department considered the fact that Boutique offered to provide the EAS with smaller aircraft than the competing proposals which, in turn, is better for the environment.

September 16, 2024
Page 3

Although Boutique appreciates the Department's attention to its pending petitions for reconsideration, we are cognizant of the 60-day deadline to file a petition for review of the Department decisions with the Circuit Court of Appeals pursuant to 49 U.S.C. 46110. In order to avoid uncertainty in connection with the issue of ripeness of any petition that Boutique files – and to obtain resolution of outstanding issues sooner rather than later – Boutique respectfully requests that the Department resolve the pending petitions for reconsideration by or before October 1, 2024. While the Department has at times in the past timely ruled on petitions for reconsideration of EAS decisions, on other occasions, the Department has not timely ruled, which creates issues for the ripeness of the Circuit Court of Appeals. To avoid ripeness issues, the Department should timely respond to pending petitions for reconsideration.

We respectfully ask that the Department issue rulings on the pending Boutique petitions for reconsideration no later than October 1, 2024. If the Department does not issue and provide Boutique with a copy of those decisions by that date, Boutique will reasonably assume that the lack of a ruling is in and of itself a final decision of the Department to deny the petition for reconsideration, and shall proceed on that basis.

We are available at your convenience to meet with you – in person or virtually – to discuss this matter.

Sincerely,

*/s/ Roy Goldberg*

CLARK HILL PLC

Counsel for Boutique Air, Inc.

Copy: Mr. Shawn Simpson, Mr. Eitan Spiegal